UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VASILII KULAKOV,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al.,<br><br>  Defendants. | No. 2:24-cv-01337-DJC-AC<br><br><br>ORDER |

Plaintiff filed this action on the claim that Defendants have unreasonable delayed his application for asylum.  Plaintiff seeks to compel Defendants to adjudicate his application via the Administrative Procedure Act ("APA") and the Mandamus Act. Defendants now move for dismissal or, in the alternative, summary judgment on the basis that Plaintiff lacks a clear right to relief and the delay in question is not unreasonable.

As discussed below, the Court finds that there has not been an unreasonable delay in adjudicating Plaintiff's asylum application and grants Plaintiff's Motion (Mot. (ECF No. 7)).

////

////

# BACKGROUND

Under the Immigration and Nationality Act, non-citizens who are physically present in the United States may apply for asylum. 8 U.S.C. § 1158(a). Non-citizens seeking asylum affirmatively, as Plaintiff here is, file a Form I-589 with United States Citizenship and Immigration Services ("USCIS"). *See* 8 C.F.R. § 208.3. Filing the Form I-589 initiates the procedures outlined in 8 U.S.C. § 1158(d). *See* 8 C.F.R. § 208.3. Section 1158(d)(5)(A) lays out certain guidelines USCIS must following considering asylum applications, including requirements that "the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed" and that "final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed[.]" 8 U.S.C. § 1158(d)(5)(A)(ii)–(iii). Both deadlines include "exceptional circumstances" exceptions. *Id.*

Plaintiff is a Russian citizen currently residing in the United States with his spouse and their two children.[1] (Compl. (ECF No. 1) ¶¶ 6–9.) On December 8, 2021, Plaintiff applied for asylum by filing form I-589 with Defendant USCIS. (*Id.* ¶ 8) Since filing his application, Plaintiff has not received an asylum interview or any decision on his request for asylum. (*Id.* ¶¶ 26-27.) Plaintiff currently remains in the United States and has Employment Authorization Documents ("EAD") permitting him to work. Plaintiff's EAD technically expired on August 5, 2024, but pursuant to current USCIS rules, Plaintiff was granted an automatic 540-day extension of his EAD. (Pl's Suppl. Br. at 1–2; Defs.' Suppl. Br. at 1.) Because of the automatic extension, Plaintiff will have his EAD until at least February 9, 2026, though Plaintiff has requested an official renewal of his EAD authorization which would further extend his EAD for 5 more years. (*Id.*) Defendants claim that Plaintiff has not requested expedited processing or to be placed on a short notice interview list. (Mot. at 5.)

---

[1] Plaintiff's spouse and their children are not themselves parties to this action, but Plaintiff states that they are "derivatives" of his asylum application. (Compl. ¶ 9.)

Defendants' Motions argues for dismissal under Fed. R. Civ. P. 12(b)(6) or summary judgment under Fed. R. Civ. P. 56 on the basis that Plaintiff has not established that Defendants had a plainly non-discretionary duty to adjudicate Plaintiff's asylum application within a set timeline, that Plaintiff has adequate alternative remedies, and that the delay in adjudicating Plaintiff's application is not unreasonable.  This motion is fully briefed and, on the Court's request, the parties have filed supplemental briefing related to Plaintiff's EAD renewal status.  (Mot.; Opp'n (ECF No. 11); Reply (ECF No. 12); Pl.'s Suppl. Br. (ECF No. 15); Defs.' Suppl. Br. (ECF No. 16).)

**LEGAL STANDARD**

**I.      Dismissal under Federal Rule of Civil Procedure 12(b)(6)**

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party."  *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).  However, if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  This rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice.  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

## II. Summary Judgment under Federal Rule of Civil Procedure 56

Summary judgment may be granted when the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether there are any factual issues that could reasonably be resolved in favor of either party, or conversely, whether the facts are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

In a summary judgment motion, the moving party must inform the court of the basis for the motion and identify the portion of the record which they believe demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the burden then shifts to the opposing party, who must establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). Summary judgment is mandated where the nonmoving party fails to "set forth specific facts showing that there remains a genuine issue for trial" and evidence "significantly probative as to any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (internal quotation marks omitted). If the evidence presented by the nonmoving party is "merely colorable, . . . or is not sufficiently probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

## DISCUSSION

### I. Propriety of Summary Judgment Motion

Plaintiff contests the propriety of Defendants' Motion for Summary Judgment, arguing that such a motion should be delayed until discovery can be obtained. (Opp'n at 4–6.) However, Plaintiff has not identified with any specificity what additional facts require further development via discovery. *See* Fed. R. Civ. Proc.

4

56(d) (a court may deny a motion if the nonmovant shows that they require discovery to justify their opposition). Plaintiff also has not "proffer[ed] sufficient facts to show that [some] evidence sought exists, and that it would prevent summary judgment." *Kapoor v. Blinken*, No. 21-cv-01961-BLF, 2022 WL 181217, at *5 (N.D. Cal. Jan. 20, 2022) (quoting *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001)). Plaintiff only suggests that "[he] should be given the opportunity to conduct discovery on the existence of any alleged exceptional circumstances that have kept this agency from taking action after a delay and on the reasonableness of the same." (Opp'n at 5–6.) This does not warrant the Court ordering that the parties conduct discovery before considering Defendants' Motion for Summary Judgment.

District courts in this circuit routinely decide immigration actions on summary judgment without discovery. *See, e.g.*, *Ahmed v. United States Dep't of State*, No. 23-CV-02474-SVK, 2024 WL 315705, at *6 (N.D. Cal. Jan. 26, 2024) (denying discovery to develop factual record as to reasonableness of two-year agency delay); *Ali v. Ordeman*, No. 2:23-cv-02822-CKD, 2024 WL 2274912, at *12–18 (E.D. Cal. May 17, 2024) (ruling on reasonableness of 14-month agency delay at dismissal stage). *But see Iqbal v. Blinken*, No. 2:23-cv-01299-KJM-KJN, 2023 WL 7418353, at *8 (E.D. Cal. Nov. 9, 2023) (declining to apply *TRAC* factors at dismissal stage). As Plaintiff has not established discovery is necessary or warranted, the Court will rule on Defendants' Motions. With that said, it is ultimately irrelevant whether this matter is considered on motion to dismiss or summary judgment; the result is the same regardless as the Court's analysis below is appropriate under either motion standard. *See infra* Discussion III.B (finding that application of the *TRAC* factors is appropriate at the motion to dismiss stage).

## II. The Mandamus Act Claim

The Mandamus Act permits district courts to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is an extraordinary remedy and is available to compel a

federal official to perform a duty only if: (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available." *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003) (internal citation omitted).  Given the relief afforded by the APA and mandamus relief are "in essence the same," the APA presents an adequate remedy and the Court elects to only analyze Plaintiff's claim under the APA only as the APA provides an adequate remedy.[2] *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022) (internal quotation omitted).

### III. APA Claim

Plaintiff seeks an order compelling Defendants to adjudicate his application under 5 U.S.C. § 706(1) of the APA.  Section 706(1) allows the Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  To succeed on an APA unreasonable delay claim, a plaintiff must show that: (1) the agency has a non-discretionary duty to act; and (2) the agency has unreasonably delayed in acting on that duty. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62–64 (2004).  Defendants challenge whether Plaintiff can meet either requirement.

#### A. Defined and Non-Discretionary Duty to Adjudicate Plaintiff's Application Within a Set Timeline

Defendants argue that Plaintiff cannot establish that Defendants have a non-discretionary duty to adjudicate Plaintiff's application as Sections 1158(d)(5)(A)(ii) and (iii) contain "an 'exceptional circumstances' carve-out" and because Section 1158(d)(7) states that no private cause of action shall arise from the time frames set forth in that section. (Mot. at 10–11.)  Many courts have agreed that while the exceptional circumstances "carve out" does grant USCIS some limited discretion, Section 1158 as a whole provides a directive for USCIS to perform a discrete, mandatory action. *See Tailawa v. Mayorkas*, No. 22-cv-01515-SPG-RAO, 2022 WL 4493725, at *3 (C.D. Cal.

---

[2] Defendants argue that Plaintiff has adequate alternative remedies on the alternative basis of his ability to request expedited processing or placement on a short notice interview list but addressing these arguments is unnecessary in light of this ruling.

Aug. 18, 2022); *Dawod v. Garland*, No. 23-cv-3211-MWF-MRWx, 2023 WL 8605320, at *4 (C.D. Cal. Aug. 10, 2023); *Yan v. Dir. of LA Asylum Off. for USCIS*, No 2:22-cv-05846-ODW-MRWx, 2023 WL 4053410, at *3 (C.D. Cal. June 16, 2023); *Andrianov v. USCIS*, No. 2:23-cv-09315-CAS-Ex, 2024 WL 3277361, at *5 (C.D. Cal. July 1, 2024).

Defendants cite two district court cases, one out-of-circuit, for the proposition that due to the presence of "exceptional circumstances," USCIS does not have a non-discretionary duty to adjudicate Plaintiff's asylum application: *Singh v. Bardini*, No. 22-cv-01027-JAM-DB, 2023 WL 4669864 (E.D. Cal. July 20, 2023) and *Zhang v. Wolf*, No. 19-cv-05370-DLI, 2020 WL 5878255, at *5 (E.D.N.Y. Sept. 30, 2020). Neither case is relevant or persuasive in this context. In both instances, the district courts were discussing the existence of exceptional circumstances in the context of the *TRAC* factors discussed below, not whether USCIS had a duty in the first instance. *See Singh*, 2023 WL 4669864, at *2 (discussing the existence of exceptional circumstances in the context of the first and second *TRAC* factors); *see also Zhang*, 2020 WL 5878255, at *5 (same). Unlike either of these cases, Defendants here argue that they did not have non-discretionary duty to adjudicate Plaintiff's asylum application based on the purported existence of exceptional circumstances.

Both Defendants' "exceptional circumstances" argument and their argument that 8 U.S.C. § 1158(d)(7) bars relief interpret Plaintiff's Complaint as seeking enforcement of the specific timelines laid out in Section 1158. However, the Complaint is clearly that it is brought based on the unreasonable delay of the adjudication of his asylum application and does not seek to enforce the specific deadlines within Subsections (d)(5)(A)(ii) and (iii). Plaintiff does not even mention the deadlines set under Section 1158(d)(5) within the Complaint. Instead, Plaintiff plainly states that his claim is that "Defendants' delay in adjudicating Plaintiff's I-589 Application is unreasonable . . . ." (Compl. ¶ 33.) Other courts have appropriately found that Section 1158(d)(7) does not present a bar on similar claims as they are predicated not on the specific deadlines within Section 1158(d)(5), but on the general

unreasonableness of the delay.  *See Andrianov*, 2024 WL 3277361, at *5; *see also Tailawal*, 2022 WL 4493725, at *3.

This same logic extends to Defendants' argument that Plaintiff cannot establish that Defendants owe a duty to adjudicate his application in a reasonable time as exceptional circumstances presently exist.  The exceptional circumstances "carve out" is part of the deadlines set by Subsections (d)(5)(A)(ii) and (iii).  Plaintiff's Complaint does not seek to enforce those specific timelines.  That exceptional circumstances may presently exist for purposes of the statute is not dispositive of claims based on the general unreasonableness of the delay.

Given the above, Defendants have failed to show that Plaintiff does not have a discrete non-discretionary duty to adjudicate Plaintiff's asylum application within a reasonable period.  Even so, USCIS's limited discretion and the purported presence of exceptional circumstances remain relevant to the *TRAC* factors.

**B.  The Delay in Reviewing Plaintiff's Asylum Application is Reasonable**

"When there is no set deadline by which an agency must act, a court evaluates whether the agency's delay is unreasonable by applying the six factors established by the D.C. Circuit in *Telecommunications Research & Action Center v. FCC* ["*TRAC*"] and adopted by the Ninth Circuit in *Independence Mining Co. v. Babbitt*[.]"  *Alaska Indus. Dev. & Exp. Auth. v. Biden*, 685 F. Supp. 3d 813, 857 (D. Alaska 2023) (citing 750 F.2d 70 (D.C. Cir. 1984); 105 F.3d 502, 507 (9th Cir. 1997)).  The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find

> any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138–39 (9th Cir. 2020) (quoting *TRAC*, 750 F.2d at 79–80).

Plaintiff contests that it is inappropriate to apply the *TRAC* factors at the pleading stage as it is a fact intensive inquiry. This Court adopts the view of other district courts in this circuit which have recognized that application of the *TRAC* factors can be fact intensive but is appropriate at the motion to dismiss stage "when the plaintiff has not alleged any facts—other than the length of the delay—that undermine USCIS's claim of reasonableness." *Varzaghani v. Mayorkas*, No. 23-cv-01876-DMG-KESx, 2024 WL 2952141, at *3 (C.D. Cal. June 5, 2024); *see also Ma v. Jaddou*, No. 2:22-cv-04210-MWF-KS, 2022 WL 17254783, at *4 (C.D. Cal. Sept. 26, 2022).

Here, Plaintiff's claims of unreasonableness are predicated almost exclusively on the time taken in adjudicating his application and Plaintiff has not alleged any other facts that suggest the delay is unreasonable. (*See generally* Compl.) As a result, analysis of the *TRAC* factors is appropriate at the motion to dismiss stage. This point is also ultimately moot as it is also appropriate for the Court to consider the *TRAC* factors on summary judgment. *See supra* Discussion I.

**1. First and Second *TRAC* Factors**

The Ninth Circuit has stated that of all the *TRAC* factors, "[t]he most important is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative." *In re a Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). The central inquiry of the rule of reason factor is "whether there is any rhyme or reason for the Government's delay – in other words, whether the agency's response time . . . is governed by an identifiable rationale." *Poursohi v. Blinken*, No. 21-cv-01960-TSH, 2021 WL 5331446, at *4 (N.D. Cal. Nov. 16, 2021) (quotation marks and citation omitted).

////

USCIS follows what is called the last-in-first-out ("LIFO") scheduling system for handling asylum applications. Courts have widely found that the LIFO system is a rule of reason. *See Teymouri v. USCIS*, No. 2:22-cv-07689-PA-JCx, 2022 WL 18717560, at *4 (C.D. Cal. Jan. 31, 2022) (collecting cases); *see also Varol v. Radel*, 420 F. Supp. 3d 1089, 1097 (S.D. Cal. Oct. 22, 2019).

Looking at the reasonableness of the facts in this particular case, Plaintiff's asylum application has been pending since December 2021. This represents a delay of over 31 months at the time of the present motion. While this is a meaningful delay for Plaintiff and one that he undoubtedly feels in an acute way, other courts have held that even longer delays are insufficient to tip the first two *TRAC* factors in a plaintiff's favor. *See Varzaghani*, 2024 WL 2952141, at *4 (finding a two-year delay to be reasonable); *see also Denisov v. Mayorkas*, No. 23-cv-06442-SI, 2024 WL 352204, at *6 (N.D. Cal. July 23, 2024) (finding a delay of "over three years" to be reasonable); *Yang*, 2023 WL 4053410, at *4 (finding a four-year delay to be reasonable); *Teymouri*, 2022 WL 18717560, at *4 (finding a five-year delay to be reasonable); *Yavari v. Pompeo*, No. 2:19-cv-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."). The delay in the adjudication of Plaintiff's application is well below both what other courts have considered to be per se unreasonable as well as what may sometimes be unreasonable based on the specific facts. *Yavari*, 2019 WL 6720995, at *8. Even if the delay Plaintiff has suffered fell into the latter category, Plaintiff has not alleged any facts that would elevate the delay to one that is circumstantially unreasonable.

As discussed above, courts do acknowledge that Congress has established requirements for adjudicating asylum actions under 8 U.S.C. § 1158(d)(5)(A), but that USCIS maintains limited discretion and that this does not afford plaintiffs a private right of action. *See Varol*, 420 F. Supp. 3d at 1097; *see also Denisov*, 2024 WL

3522047, at *6. As a result, the effect of the timetable provided by Section 1158(d)(5)(A) is limited as it does not outweigh the reasonableness of USCIS's policies. Defendants also argue that there are presently exceptional circumstances that warrant the application of the exceptions provided by Section 1158(d)(5)(A)(ii) and (iii), "includ[ing] funding shortages, an unprecedented surge in applications, and a backlog exacerbated by the COVID-19 pandemic . . . ." (Mot. at 11.) The Court need not reach this argument however, given the above.

Accordingly, the first factor weighs in favor Defendants and the second factor is neutral.[3]

### 2. Third and Fifth *TRAC* Factors

The third and fifth factors "concern[] whether human health and welfare are at stake and the nature and extent of the interests prejudiced by delay . . . ." *Singh*, 2023 WL 4669864, at *3. Plaintiff claims that the delay in adjudicating his application has caused him emotional hardship as he "constantly worries over the safety of his family if forced to return to Russia" as well as health issues including "depression and constant migraines[.]"[4] (Opp'n at 16.)

The Court is sympathetic to the effects that this delay has had on Plaintiff. As some other courts have recognized, it is very understandable that the insecurity in Plaintiff and his family's asylum status has caused Plaintiff significant emotional distress. *See Varzaghani*, 2024 WL 2952141, at *5. However, Plaintiff and his family are presently able to remain in the United States and Plaintiff is able to work for at least another year, if not longer if Plaintiff's EAD is renewed. This does not undo the

---

[3] District courts disagree as to whether in similar circumstances the second *TRAC* factor should favor the defendant or be considered neutral. *Compare Fan Yang*, 2023 WL 4053410, at *4 ("Thus, the Court finds that the first and second *TRAC* factors favor Defendants."), *with Varol*, 420 F. Supp. 3d at 1097 ("The first factor favors the Defendants and the second factor is neutral."). Whether the second factor should be considered in Defendant's favor or neutral does not alter the ultimate result here.

[4] These underlying facts were included not in the Complaint but in an affidavit attached to Plaintiff's Opposition. As such, they are also not properly within the scope of the Court's consideration on motion to dismiss. Given that the Court ultimately rules against Plaintiff, consideration of these allegations presents no prejudice to Defendants.

stress of the asylum process for Plaintiff, but courts have appropriately recognized that when an individual can continue to live and work in the United States, the effects of the delay are significantly reduced for purposes of the third and fifth *TRAC* factors. *See Varzaghani*, 2024 WL 2952141, at *5; *see also Dawod v. Garland*, No. 23-cv-3211-MWF-MRWx, 2023 WL 8605320, at *9 (C.D. Cal. Aug. 10, 2023).

The Court does pause here express some concern about Plaintiff's work status. Plaintiff is presently able to live and work in the United States and will be able to do so for some time based on USCIS's "temporary final rule" which granted Plaintiff an automatic 540–day extension. Still, Plaintiff is already faced with substantial uncertainty regarding his asylum status. That Plaintiff's EAD has not yet been renewed further compounds the stress of Plaintiff's position. Defendants state that presently "80% of EAD renewal applications based on pending asylum applications are completed within 12.5 months of submission." (Opp'n at 2.) This statistic contains the tacit acknowledgment that 20% of EAD renewal applications <u>will not</u> be adjudicated in that time.

At this point, the Court still cannot find that the uncertainly as to Plaintiff's EAD status creates a concern for human health or welfare as it relates to the consideration of his application. Plaintiff will remain able to live and work in the United States for more than a year and possibly much longer. A different set of factual circumstances – particularly where the end of Plaintiff's EAD status was more rapidly approaching – could present a situation where the third factor weighs strongly in Plaintiff's favor.

Given the above, Plaintiff's allegations do not rise to the level of creating concern that human health or welfare are at stake in the delay. Additionally, the prejudice Plaintiff suffers from this delay, while highly unfortunate, is the same suffered by many asylum seekers in similar positions. *See Singh*, 2023 WL 4669864, at *3. Thus, the third and fifth *TRAC* factors, at best, weigh slightly in Plaintiff's favor or are neutral.

////

### 3. Fourth *TRAC* Factor

The fourth *TRAC* factor asks courts to "consider the effect of expediting delayed action on agency activities of a higher or competing priority." *In re Nat. Res. Def. Council, Inc.*, 956 F.3d at 1138–39.  In adjudicating the applications before it, USCIS is faced with applications from numerous individuals who are in desperate need of asylum and may suffer serious harm from having their applications delayed.  As a result, courts have repeatedly recognized that the ultimate effect of granting relief to asylum applicants who file suit is that the plaintiff is ordered to the head of the line. *See, e.g.*, *Varol*, 420 F. Supp. 1098.  This often means that even when a plaintiff succeeds in obtaining relief in a suit such as this one, they are only moved ahead of other applicants who may be suffering from similar or worse delays, and suffering similar or worse prejudice from those delays.

Granting relief to Plaintiff would further affect USCIS's activities of a higher or competing priority as it relates to other applicants with pending asylum applications who would face delays if Plaintiff was granted relief. *See id.*  The fourth *TRAC* factor thus weighs in Defendants' favor.

### 4. Sixth *TRAC* Factor

The sixth and final *TRAC* factor is not a factor in the same sense of the others, "but merely a confirmation that agency delay need not be intentional to be unreasonable." *Feng v. Beers*, No. 2:13–cv–02396-JAM-DAD, 2014 WL 1028371, at *5 (E.D. Cal. Mar. 14, 2014).  Plaintiff does not allege that Defendants have acted in bad faith.  (*See* Opp'n at 17 ("Plaintiff does not allege that Defendants' delay was caused by bad faith *per se*.").)  As such, this factor is neutral.

### 5. Weighing the *TRAC* Factors

The Court finds that the first and fourth of the *TRAC* factors weigh in Defendants favor.  The sixth and second factors are neutral.  The second and fifth factors are neutral or weigh slightly in Plaintiff's favor.

////

In generally, the first factor is considered to be the most important, with significant weight also afforded to the fourth factor.  *See Poursohi*, 2021 WL 5331446, at *10.  Considering the overall balance, the fact that the first and fourth factor weighing in Defendants' favor makes it clear that the ultimate result should be in favor of Defendants.  While the 31-month delay Plaintiff has suffered at the time of issuing this order is substantial, the weight of authority suggests that such a delay is reasonable without some additional facts showing the delay is unreasonable beyond the simple fact of the delay.

Given the above, Defendants' Motion to Dismiss is granted on this ground.  As stated previously, Plaintiff has not shown the existence of any disputed material facts that would preclude summary judgment.  As such, Defendants are also entitled to summary judgment on Plaintiff's APA claim for unreasonable delay for the same reasons.

## CONCLUSION

In accordance with the above, it is hereby ORDERED that Defendants' Motion for Dismissal and Summary Judgment (ECF No. 7) is GRANTED.  The Court finds that Defendants are entitled to judgment on all three of Plaintiff's claims.  The Clerk of Court is directed to enter judgment in Defendants' favor.

IT IS SO ORDERED.

Dated:   **November 15, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 – kulakov24cv01337.MTD&MSJ